IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-22693-CV-KING

C.H. ROBINSON WORLDWIDE, INC.,

    Plaintiff,

vs.

COMPAÑIA LIBRE DE NAVEGACION
(URUGUAY) S.A.,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (DE #16). Plaintiff has responded (DE #17), and Defendant has filed a Reply (DE #20).

**I.   Legal Standard**

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the record as a whole could not lead a rational fact-finder to find for the nonmoving party, there is no genuine issue of fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving

party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (holding that, to meet its burden, the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252. If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50.

**II.  Discussion**

The Court has examined the pleadings and the one affidavit that has been filed in this case (DE #16-1)[1], and determines that the material facts are not in dispute. On or about August 7, 2008, Plaintiff entered into a contract of carriage with Defendant, wherein Defendant agreed to transport a shipment of pears to a named consignee, Agropel Agroindustrial Perazzoli LTDA. On August 21, 2008, the shipment was discharged from the vessel at the Port of Santos, Brazil, and turned over to the terminal operator at the port. On August 25, 2008, the shipment was inspected by an agent of the consignee, at which point it was discovered that the pears had frozen during shipment, rendering them unusable. A joint survey of the shipment was then conducted on September 13, 2008. This lawsuit was subsequently filed on September 10, 2009 (DE #1).

Defendant argues that summary judgment should be granted because the one-year statute

---

[1] The affidavit incorporates the bill of lading, a survey report, and several other documents, all of which the Court has considered.

of limitations has expired. Indeed, this case is governed by the Carriage of Goods at Sea Act (COGSA), which states as follows: "In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered." 46 U.S.C. App'x § 1303(6). The dispute, therefore, turns on the meaning of the word "delivery." Defendant contends that delivery occurred on either August 21 (when the goods were discharged) or August 25 (when the consignee's agent inspected the goods). Plaintiff, on the other hand, argues that delivery did not occur until September 13, when the joint survey of the goods was conducted.

There appears to be no binding precedent in this jurisdiction that explains the meaning of the word "delivery" as used in the COGSA statute. In other circuits, however, there appear to be two differing approaches. One approach, adopted by the Fifth Circuit, is that delivery only refers to the responsibilities of the carrier, and occurs when "the carrier places the cargo into the custody of whomever is legally entitled to receive it from the carrier." *Servicios-Expoarma, C.A. v. Industrial Maritime Carriers*, 135 F.3d 984, 992 (5th Cir. 1998). The second approach, followed by several district courts, is that delivery occurs when the consignee has been notified of the discharge of the goods and has had a reasonable opportunity to inspect them. *See, e.g., Lithotip, CA v. S.S. Guarico*, 569 F. Supp. 837, 840 (S.D.N.Y. 1983); *Sumitomo Corp. of Am. v. M/V Pennsylvania Rainbow*, 1989 AMC 1467 (N.D. Cal. 1989).

The Fifth Circuit's decision contains the most recent and thorough discussion of this issue, and the Court finds it persuasive. Indeed, as noted by the court in *Servicios*, the word "delivery" was a deliberate choice by the drafters to indicate fulfillment of the carrier's duties, rather than notice to the recipient. 134 F.3d at 992. The *Servicios* court further noted, and this Court agrees, that COGSA's one-year limitations period is not drafted as a typical statute of

limitations, which generally starts running when a cause of action "accrues," which, in turn, typically involves a reasonable opportunity for notice to the injured party. *Id.* at 988. Rather, the choice of the term "delivery" indicates a clear intent to depart from typical statute-of-limitations principles. Thus, the Court will follow the Fifth Circuit's analysis in the instant case.

Here, the record is undisputed that, on August 21, 2008, the shipment was discharged from the ship and delivered into the custody of the terminal operator, which was the entity legally entitled to receive the shipment. At that point, the carrier had fulfilled its legal duties and the clock on COGSA's one-year limitations period began running. That time limit expired on August 21, 2009, two and a half weeks before this lawsuit was filed.

Plaintiff's brief reference in a footnote to the "custom of the port" doctrine does not alter this analysis. The Fifth Circuit in *Servicios* acknowledged that, to determine who is the entity legally entitled to receive the goods, one may have to look to the "custom of the port." *Id.* at 993. That is, each port may have a different practice of receiving shipments, and whatever specific action that must be taken by the carrier in order to fulfill its legal duty of delivery may differ from port to port. Here, however, it appears from the record that the carrier followed the proper procedure by placing the goods in the custody of the terminal operator, and Plaintiff has not suggested otherwise. Moreover, even if there were some allegation that a custom existed that would have caused the "delivery" to occur after the actual discharge of the goods to the terminal operator, Plaintiff has failed to support it with any evidence. In fact, Plaintiff has failed to provide any affidavits, documents, or deposition transcripts in support of its position. The record is therefore uncontradicted that Defendant delivered the goods in accordance with port customs.

Finally, even if the Court were to follow the second approach to the definition of "delivery," the same result would be reached. Indeed, the second approach dictates that delivery

4

occurs when the consignee has been notified of the discharge of the goods and has had a reasonable opportunity to inspect them. *See Lithotip*, 569 F. Supp. at 840. Here, the record is uncontradicted that an agent for the consignee actually inspected the goods on August 25, 2008, at which point the damage was discovered. Thus, even under the second approach, COGSA's one-year limitation period began running on August 25 when the consignee had actual notice of the damage to the shipment, and would have expired on August 25, 2009, two weeks before this lawsuit was filed. Therefore, Plaintiff cannot prevail under either theory.

### III. Conclusion

Accordingly, after careful consideration of all the materials and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED,** and **DECREED** that:

1. Defendant's Motion for Summary Judgment (DE #16) is hereby **GRANTED.**
2. All pretrial dates and deadlines are hereby **CANCELLED.**
3. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers, at Miami, Miami-Dade County, Florida, this 16th day of June, 2010.

_____
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

Cc:
**Counsel for Plaintiff**
Law Office of Frank Andrew Prieto, P.A.
55 Merrick Way, Sutie 212
Coral Gables, FL 33134
305-461-1116
Fax: 305-461-6446
Email: prietolaw@atlanticbb.net

**Counsel for Defendant**
Damon Thomas Hartley
Fowler White Burnett
1395 Brickell Avenue
14th Floor
Miami, FL 33131-3302
Email: dhartley@fowler-white.com
ATTORNEY TO BE NOTICED

Jan Michael Kuylenstierna
Fowler White Burnett
1395 Brickell Avenue
14th Floor
Miami, FL 33131-3302
305-789-9217
Fax: 789-9201
Email: jmk@fowler-white.com
ATTORNEY TO BE NOTICED

Ryon Lyndon Little
Fowler White Burnett
1395 Brickell Avenue
14th Floor
Miami, FL 33131-3302
305-789-9246
Fax: 305-728-7546
Email: rlittle@fowler-white.com
ATTORNEY TO BE NOTICED